# ISACK ISACKSON v. W. D. LOVELL.[1]

October 27, 1911.

Nos. 17,218—(36).

**Contributory negligence.**

> Evidence considered in this, a personal injury case, and *held*, that the question of the plaintiff's contributory negligence was one of fact for the jury, and that there was no reversible error in the court's charge to the jury.

Action brought in the district court for Brown county, but tried in Hennepin county, to recover $50,800 for personal injuries. The reply alleged that if plaintiff ever signed any release, he had done so at defendant's instance and while suffering from delirium induced by his accident, or that plaintiff signed the instrument while under the influence of anesthetics and through defendant's fraudulent representations. The case was tried before Hale, J., and a jury which returned a verdict in favor of plaintiff for $7,583.33. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*John D. O'Brien* and *Bracelen & Cronin,* for appellant.

*Somerville & Hauser* and *A. V. Rieke,* for respondent.

START, C. J.

The defendant, in December, 1908, was engaged, as contractor, in erecting a water tower and tank at the village of Springfield, this state. The tank proper was round, twenty feet in diameter and thirty-five feet deep, and made of steel plates. It stood upon a steel frame some ninety feet high, so that the top of the tank was one hundred twenty-five feet above the ground. Eight iron rods, called "spider rods," extended from the rim of the top of the tank, through which they passed, to a steel plate in the center, to which they were fastened. The sole purpose of the rods was to make the tank round.

[1] Reported in 132 N. W. 918.

115 M.—31.

Both the tower and tank had been so far completed by December 7 that the work of erecting the roof of the tank began on that day. The place for such work was the top of the tank, upon which planks were laid for the men to stand on in erecting the roof. The materials for the roof were bolts and steel plates about one-eighth inch thick, seven or eight feet long, two and one-half to three feet wide at the bottom or outside, and about one-half that width at the top or cap. These sheets were piled up on one side of the plank floor, and were to be bolted to the rim of the tank and to each other at both ends.

The plaintiff, on December 15, had been in the employ of the defendant for about a week, and on the morning of that day he commenced work on the roof for the first time. The work was in charge of the defendant's foreman and representative. The plaintiff, three hours after he commenced this work, and while sitting on a plank which rested on two spider rods, and assisting the foreman in bolting the roof sheets to the rim of the tank, was thrown from the plank to the bottom of the tank by the breaking of one of the rods by reason of defects therein.

The plaintiff, as a result of the accident, was seriously and permanently injured, and brought this action to recover damages therefor, upon the alleged ground that his injuries were caused by the negligence of the defendant in failing to use due care in furnishing him a reasonably safe place in which to do the work assigned to him. The answer put in issue the allegations of the complaint as to defendant's negligence, and alleged a release by the plaintiff of his damages. A trial of the issues resulted in a verdict for the plaintiff for $7,583.33. This is an appeal by the defendant from an order of the district court of the county of Hennepin denying his blended motion for judgment notwithstanding the verdict or for a new trial.

The defendant here urges that the trial court erred in denying his motion for a directed verdict for the alleged reason that the evidence conclusively shows that the plaintiff was guilty of contributory negligence, and also in its instructions to the jury as to the alleged release. The basis of the claim that plaintiff was guilty of contributory negligence, as a matter of law, is to the effect that he,

with the other members of the crew working on the roof, were directed by the foreman to be careful to keep the planks on the edge of the tank, and that he placed the plank from which he fell upon the rods. The record discloses two very substantial reasons why the question of plaintiff's contributory negligence was correctly submitted as one of fact to the jury.

The evidence does not show with any degree of certainty that the plaintiff was ever told to keep the planks on the edge of the tank, or that he was present when such directions were given to the other members of the crew. Again, the evidence is quite clear that the plaintiff at the time of the accident was occupying the only practicable place there was from which to assist the foreman in bolting the roof, who was then in a position to see the plaintiff and to know that he was sitting on a plank that rested on the rods, but did not advise him that he was violating orders, or otherwise warn him. The evidence does not show as a matter of law that plaintiff was guilty of contributory negligence, and we hold that defendant's request for an instructed verdict was rightly denied.

The trial court gave to the jury the instruction following: "There have been introduced in this case a check and a draft, which it is claimed were given to the plaintiff in payment and settlement of his claim for damages. It appears that neither the draft nor the check has ever been paid, and the check has been tendered back to the defendant in the course of this suit, and the defendant has refused to accept it. The court charges you that, in the absence of an agreement between the parties or an understanding that the check and draft in question were to be taken in satisfaction and payment of the claim for damages on the part of the plaintiff, it would not have that effect. The mere giving of a check or of a draft without any agreement or understanding that it shall be received in payment is not prima facie evidence of payment. But if the parties agree that it shall be so taken it may be as binding as though the money itself was paid. So that will be the first question, gentlemen, for you to consider in this case, whether or not this check and draft were given under an agreement and understanding that they were to be received in payment of this claim." The giving

of this instruction is claimed to be reversible error. We are of the opinion that it was not.

The instruction, when read in connection with the evidence, is reasonably clear and to the effect that the mere giving of an unpaid check or draft, without any agreement or understanding that it should be received in payment (that is, in discharge of plaintiff's claim), is not prima facie evidence of payment (discharge). The trial court was not at any time requested to make the instruction more definite.

Order affirmed.